IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2022 Session

**WESTLEY MUREL HALL v. MEGAN LEIGH HALL**

**Appeal from the Circuit Court for Sumner County**
**No. 83CC1-2019-CV-176          Joe H. Thompson, Judge**

_____

**No. M2021-00757-COA-R3-CV**

_____

In this post-divorce action, the trial court conducted a hearing with respect to the mother's request to relocate to Ohio with the parties' minor child, a request which the father opposed. Following a bench trial, the trial court entered an order permitting relocation and modifying the parties' permanent parenting plan to provide the father with more co-parenting time. The trial court also granted an award of attorney's fees to the mother. The father has appealed. Based on the trial court's failure to render sufficient findings of fact and conclusions of law concerning its award of attorney's fees to the mother, we vacate the attorney's fee award and remand the case to the trial court for entry of an order containing written findings of fact and conclusions of law concerning the basis for its decision to award attorney's fees to the mother and the reasonableness of the amount awarded. The trial court's judgment is affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Heather G. Parker, Murfreesboro, Tennessee, for the appellant, Westley Murel Hall.

Audrey Lee Anderson, Nashville, Tennessee, for the appellee, Megan Leigh Hall.

**OPINION**

I. Factual and Procedural Background

Westley Murel Hall ("Father") and Megan Leigh Hall ("Mother") were divorced by decree of the Sumner County Circuit Court ("trial court") on March 18, 2019. The

parties had one child during their marriage, L.H. ("the Child"), who was born in 2015. The parties' Marital Dissolution Agreement ("MDA") and Permanent Parenting Plan order ("PPP") were incorporated by reference into their divorce decree. The PPP provided, *inter alia*, that Mother would be the primary residential parent of the Child with Father enjoying ninety-five days of co-parenting time per year, to be exercised primarily on alternating weekends.

On July 10, 2020, Mother filed a petition seeking the trial court's permission to relocate with the Child to Ohio. Mother averred that she was engaged to marry a man who lived in Ashville, Ohio, approximately 316 miles away from Mother's Tennessee residence. Mother also stated that upon receiving her notification of intent to move to Ohio, Father had objected to her relocation with the Child such that the parties were unable to agree upon a new co-parenting schedule.

Father filed an answer opposing Mother's relocation to Ohio with the Child and asked that her petition be dismissed. Father concomitantly filed a counter-petition seeking to modify the PPP. Father asserted that when the PPP was adopted, the Child had not yet begun to attend school. Father averred that the Child would begin kindergarten in August 2020. Father also stated that his employment had changed and now afforded him a better schedule. Father accordingly postulated that a material change in circumstance had occurred warranting a modification to the PPP. Father sought a greater share of co-parenting time with the Child as well as a resultant change in his child support obligation. Mother responded to the counter-petition, denying that a material change in circumstance had occurred.

The trial court conducted a bench trial concerning Mother's petition to relocate and Father's petition to modify the PPP on December 22, 2020, via video conference. In addition to considering testimony from both parties, the trial court also heard testimony from Mother's current husband, Mother's former sister-in-law, and the Child's paternal grandmother. Subsequently, on February 1, 2021, the trial court entered an order permitting Mother's relocation with the Child. In support, the trial court reviewed the testimony in light of the factors contained in Tennessee Code Annotated § 36-6-108(c)(2), finding, *inter alia*, that (1) neither parent believed the other to be a "bad" parent, (2) Mother had enjoyed more co-parenting time with the Child since the parties' divorce, and (3) Father was a good provider who had chosen a profession requiring him to work numerous hours.

According to the trial court's findings, no evidence was presented demonstrating that the Child's physical, educational, or emotional development would be impacted by relocation. The court further found that the parties were not a "high conflict couple" and that they had exhibited their ability to work together for the Child's benefit. The court also determined that although the proposed relocation would not enhance the Child's or Mother's emotional state or education, the move would augment their quality of life

financially because Mother's husband earned a good income that improved Mother's financial situation.

Although recognizing that Father's family support system was in Tennessee, the trial court found that there was no disingenuous reason for either party's position concerning the proposed relocation. While noting Father's frustration that the Child might relocate, the court opined that "sometimes moving away is the best thing for a parent to make them the best parent they can be." Additionally, the court found that Mother's new husband had a daughter, with whom he enjoyed equal co-parenting time, and that Mother was experiencing a toxic relationship with her family in Tennessee.

The trial court awarded Father ninety-seven days of co-parenting time per year and ordered that the parties share equally in transportation responsibilities. The court reserved the issues of child support and attorney's fees. The court entered a new permanent parenting plan ("modified PPP") implementing the modified parenting schedule on March 2, 2021. The modified PPP also provided that Father would pay $815.00 per month in child support to Mother. The respective child support worksheet was attached. Meanwhile, each party's attorney filed an affidavit of attorney's fees at the trial court's direction. The court took the issue of attorney's fees under advisement.

On April 1, 2021, the trial court entered an order awarding attorney's fees to Mother in the amount of $12,548.80. Father filed a motion to alter or amend on April 29, 2021, arguing that the award of attorney's fees was improper. The trial court denied Father's motion by order dated June 21, 2021, although the court did grant Father additional time within which to pay such fees. Father timely appealed.

## II. Issues Presented

Father presents the following issues for our review, which we have restated slightly:

1. Whether the trial court abused its discretion by allowing Mother to relocate to Ohio with the Child.

2. Whether the trial court erred by denying Father's request to increase his co-parenting time.

3. Whether the trial court abused its discretion by failing to award Father a downward deviation in child support for extraordinary travel expenses.

4. Whether the trial court abused its discretion in its award of attorney's fees to Mother.

- 3 -

### III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *See Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). In addition, the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

As this Court has explained concerning issues of parental relocation:

> In July 2018, the Tennessee General Assembly amended Tennessee's relocation statute, Tennessee Code Annotated section 36-6-108. According to our research, this Court has applied the amended statute in only two other cases, *Dungey* [*v. Dungey*], [No. M2020-00277-COA-R3-CV,] 2020 WL 5666906 [(Tenn. Ct. App. Sept. 23, 2020)] and *Schaeffer* [*v. Patterson*], [No. W2018-02097-COA-R3-JV,] 2019 WL 6824903 [(Tenn. Ct. App. Dec. 13, 2019)]. In these cases, we explained that the previous relocation statute "often required courts to conduct an analysis of whether the parents were spending 'substantially equal intervals of time' with the child and whether the parent seeking relocation demonstrated a 'reasonable purpose' for the proposed move." *Dungey*, 2020 WL 5666906, at *2; *see also Schaeffer*, 2019 WL 6824903, at *4-5. The amendment removed the "substantially equal intervals of time" and "reasonable purpose" criteria from the trial court's analysis. *Dungey*, 2020 WL 5666906, at *2. As noted in *Dungey*, the current version of the statute "restore[s] a significant amount of discretion to trial courts and does not contain a presumption either for or against relocation." *Dungey*, 2020 WL 5666906, at *2 n.1.

*Franklin v. Franklin*, No. W2020-00285-COA-R3-CV, 2021 WL 5500722, at *2 (Tenn. Ct. App. Nov. 24, 2021). Inasmuch as parental relocation decisions involve "significant" trial court discretion, these decisions should be reviewed pursuant to an abuse of discretion standard. "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

Concerning permanent parenting plan modifications, our High Court has elucidated as follows:

> A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d).
>
> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* . . . A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013) (other internal citations omitted).

Tennessee Code Annotated § 36-6-108(f) (2021) provides that "[e]ither parent in a parental relocation matter may recover reasonable attorney fees and other litigation expenses from the other parent in the discretion of the court." As such, this Court must review the trial court's decision to award such fees under the abuse of discretion standard. *See Lima v. Lima*, No. W2010-02027-COA-R3-CV, 2011 WL 3445961 at *9 (Tenn. Ct. App. Aug. 9, 2011). Decisions concerning child support are also reviewed pursuant to an abuse of discretion standard. *See Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

## IV. Parental Relocation

Father contends that the trial court abused its discretion in allowing Mother to relocate with the Child to Ohio, arguing that relocation was not in the Child's best interest. According to Father, the trial court ignored facts presented at trial that affected the best interest analysis, such as quality time the Child enjoyed with Father and her extended family, all of whom resided in Tennessee. Father urges this Court to consider his proof that he often spent time with the Child outside of the time allotted to him in the PPP and that the Child enjoyed significant relationships with all of her grandparents. Father posits that the trial court placed great emphasis on the Child's relationship with her stepfather and stepsister, both of whom the Child had only known for a short period by the time of trial.

The parental relocation statute, codified at Tennessee Code Annotated § 36-6-108 (2021), provides as follows in pertinent part:

(c)(1) If a petition in opposition to relocation is filed, the court shall determine whether relocation is in the best interest of the minor child.

(2) In determining whether relocation is in the best interest of the minor child, the court shall consider the following factors:

(A) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life;

(B) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

(C) The feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;

(D) The child's preference, if the child is twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older

children should normally be given greater weight than those of younger children;

(E)     Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the nonrelocating parent;

(F)     Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity;

(G)     The reasons of each parent for seeking or opposing the relocation; and

(H)     Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a).

In its February 1, 2021 order, the trial court found as follows with respect to the applicable factors listed above:

Pursuant to the factors set forth in the statute at T.C.A. § 36-6-108(c)(2), the Court further finds that with respect to factor (A) [the court] hasn't heard any evidence that leads [it] to believe that Mom believes [Father] is a bad dad. Also, there was no evidence that Dad believes [Mother] is a bad mom. Further, the Court does not see the relationship between the Mother and her parents is a healthy one. The Court also finds that from a mathematical standpoint the Mother has had more parenting time with [the Child] than the Father has since their divorce. The Court finds that the Father has a good job, is a good provider, and has chosen a profession where he works a lot. As a result of that, Mom is going to have more time with [the Child].

On factor (B) the Court finds that the parties' minor child does not have any special needs and [the court] hasn't heard anything that would impact the physical, educational, and emotional development of the minor child by a relocation to Ohio. On Factor (C) the Court will address preserving the relationship between the Dad and the minor child through suitable visitation arrangements later in this Order.

Factor (D) is not an issue in this case because of the age of [the Child]. The Court sees the parties as not a high conflict couple and that

- 7 -

they work together for the benefit of [the Child]. Therefore Factor (E) is also not an issue in this case.

The Court does find that with respect to Factor (F) the relocation to Ohio will not emotionally or educational[ly] enhance the general quality of life for the Mother and the minor child, however clearly financially the relocation does enhance the quality of life for the Mother and the minor child due to Mother's husband's ability to generate a good income for himself and the family. The Court sees that on her own the Mother does not have the financial earning power that she did either when she was with [Father] or now that she's with [her current husband].

When the Court looks at Factor (G) it does understand that the Father [is] opposing the move to Ohio and the reason he points to is because his support system is here in Tennessee. The Court does not believe there is any disingenuous reason for either party with respect to the relocation.

The last factor, (H) the Court finds it worrisome that although it is frustrating when parents move away from each other, sometimes moving away is the best thing for a parent to make them the best parent they can be. The Court sees this relocation as first, mom's new husband has a daughter with 50/50 parenting time and second, the Mom is in a toxic relationship with her family.

Based on the evidence presented concerning the statutory factors, the trial court determined that allowing relocation was in the Child's best interest.

Following our thorough review of the evidence presented in light of the best interest factors outlined above, we conclude that the evidence preponderates in favor of the trial court's findings. Respecting Factor A, Mother presented proof that she maintained a significant and close bond with the Child based on the fact that she had been the Child's primary caregiver, especially since the time of the parties' divorce, which occurred when the Child was eighteen months old. Mother testified that Father had only exercised forty-nine days of co-parenting time in 2019 and had exercised sixty-six days of co-parenting time in 2020, due in part to his demanding work schedule. Mother acknowledged, however, that Father was a good parent, that he loved the Child, and that the Child loved him. Neither party took issue with regard to the other parent's ability to care for the Child. The parties also recognized the Child's significant bond with her grandparents, all of whom lived in Tennessee. In addition, Mother and her current husband related that the Child enjoyed a close and loving relationship with her stepfather and stepsister, the latter of whom was a mere two months older than the Child. As the court found, however, Mother had enjoyed significantly greater co-parenting time and

thus more involvement in the Child's life and activities during the previous few years. We determine this fact to weigh heavily in the analysis of Factor A.

Respecting Factor B, no proof was presented that the Child had any special needs or that the relocation would have a significant impact on her physical, educational, or emotional development. The Child was six years of age at the time of trial and had only been attending kindergarten for a matter of months. Mother introduced evidence that although the elementary school the Child would attend in Ohio was comparable to the school she attended in Tennessee with regard to test scores, it was a smaller school with a lower student-to-teacher ratio, which Mother believed would benefit the Child based on her personality traits. Mother also presented testimony demonstrating that the Child could continue to participate in dance classes and other extracurricular activities in Ohio.

Concerning Factor C, the trial court fashioned a parenting plan that afforded the Father ninety-seven days of co-parenting time annually, which was a larger percentage of time than Father had exercised while the Child was residing in Tennessee. The court developed a co-parenting schedule that contemplated not only the Child's school holidays but also Father's work schedule and travel logistics in an attempt to provide Father significant time with the Child while also accommodating the Child's and the parties' schedules. The trial court clearly attempted to craft a parenting plan that would allow Father to maintain his relationship with the Child through visitation, and we agree that it does by reason of the fact that it will permit Father more co-parenting time with the Child than he has enjoyed in the past.

As the trial court noted, it did not hear testimony from the Child regarding her preference due to her young age. As such, Factor D is of no consequence. With respect to Factor E, Father proffered no evidence that Mother had attempted to thwart his relationship with the Child. In fact, Father conceded during his testimony at trial that he and Mother worked well together concerning the Child and co-parenting responsibilities.

Regarding Factor F, Mother presented proof that the Child's quality of life would be enhanced by the relocation in that Mother could earn a slightly greater income from employment in Ohio and Mother's new husband would also contribute his significant income and assets to the family unit. With respect to Factor G, the trial court found no disingenuous motive undergirding Mother's desire to relocate, and the evidence supports that determination. Mother testified that the reason she sought to relocate was predicated on her desire to reside with the Child, her husband, and her stepdaughter so that they could all be together as a family unit. Mother related that after discussing the situation with her husband, the couple decided that, on balance, it would prove easier for Mother to relocate because of her co-parenting arrangement, which provided her a much greater percentage of time with the Child than it provided Father, while her husband's co-parenting arrangement provided him fifty percent time with his child, a schedule that would be more difficult to accommodate were he to move to Tennessee. This Court has

previously held that although not dispositive of a relocation dispute, a desire to live with one's spouse is "an appropriate desire that takes into account the children's best interest." *Schaeffer v. Patterson*, No. W2018-02097-COA-R3-JV, 2019 WL 6824903, at *11 (Tenn. Ct. App. Dec. 13, 2019) (quoting *Fichtel v. Fichtel*, No. M2018-01634-COA-R3-CV, 2019 WL 3027010, at *17 (Tenn. Ct. App. July 10, 2019)).

When Mother was questioned concerning whether she had endeavored to relocate in order to be away from her family, Mother replied that she had not.[1] Despite the volatility of that relationship in recent years, Mother indicated that she had never kept her family from seeing the Child and, instead, had encouraged the relationship between her parents and the Child. The Child's paternal grandmother testified that Father allowed the Child to spend time with her and her husband during the weekends that Father enjoyed co-parenting time.

Finally, with respect to Factor H, which directs us to consider "[a]ny other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a)," we find it significant that the parties had demonstrated that they could work together to support the Child's well-being. As the trial court determined, Mother and Father were "not a high conflict couple," and we commend them for their ability to co-parent well. We also find it commendable that both parties exhibited commitment to maintaining the Child's relationship with the other parent as well as grandparents and other family members. Based on the proof presented in light of the statutory factors, we conclude that the trial court did not abuse its discretion in allowing Mother to relocate to Ohio with the Child. Following our thorough review of the record, we cannot conclude that the trial court "appl[ied] an incorrect legal standard, reache[d] an illogical result, resolve[d] the case on a clearly erroneous assessment of the evidence, or relie[d] on reasoning that cause[d] an injustice." *See Gonsewski*, 350 S.W.3d at 105. We therefore affirm the trial court's decision to permit Mother's relocation with the Child.

## V. Modification of Permanent Parenting Plan

Father asserts that he presented proof demonstrating that a material change in circumstance had occurred since entry of the parties' original PPP, warranting a modification of the respective co-parenting schedule. Father complains that he was not granted sufficient co-parenting time in the trial court's modified PPP. Mother urges that the modified PPP should be affirmed because (1) the trial court thoughtfully considered the schedules of the Child and the parties when fashioning it and (2) the court provided more co-parenting time to Father than he enjoyed under the original PPP.

---

[1] Mother presented evidence that her family, particularly her parents, were opposed to her marriage to her current husband and had tried to control Mother's actions, both verbally and physically, after she began dating him. The trial court characterized Mother's relationship with her family as "toxic," and the proof supports that finding.

Respecting this issue, Tennessee Code Annotated § 36-6-108 provides in pertinent part:

> (c)(3) If, upon consideration of factors in subdivision (c)(2), the court finds that relocation is in the best interest of the minor child, the court shall modify the permanent parenting plan as needed to account for the distance between the nonrelocating parent and the relocating parent.
>
> * * *
>
> (d) In fashioning a modified parenting plan under subdivisions (c)(3) and (4), the court shall consider and utilize available alternative arrangements to foster and continue the child's relationship with and access to the other parent.

Pursuant to Tennessee Code Annotated § 36-6-108(c)(3), the trial court was authorized to modify the parties' PPP following the court's determination that relocation was in the best interest of the Child; therefore, the court properly granted modification in this action. The sole question, then, is whether the trial court fashioned a modified PPP that "consider[ed] and utilize[d] available alternative arrangements to foster and continue the child's relationship with and access to the other parent." Following our review of the modified PPP, we conclude that the trial court appropriately did so here.

The trial court's modified PPP awarded Father ninety-seven days of co-parenting time with the Child, which was an increase from the ninety-five days he had been awarded in the original PPP and more co-parenting time than he had exercised annually during the previous two years. Father's co-parenting time was established to be exercised on alternating weekends as well as during the Child's breaks from school. The court ordered that Father could pick up the Child from school on alternating Fridays and keep the Child until Mother arrived to retrieve her on Sunday afternoons. In addition, Father was awarded every Father's Day holiday with the Child as well as alternating fall and spring school breaks and alternating July Fourth and Thanksgiving holidays. Father was also awarded one-half of the Child's winter break and five weeks during the summer.

Father protests that he should have been awarded all three-day weekends corresponding with school holidays that fall on a Monday, such as Labor Day and Presidents' Day, as he suggested in his proposed parenting plan. When the trial court questioned Father during trial concerning his employment schedule, however, Father indicated that he "work[s] every holiday" unless the holiday were to fall on his regular days off, which he testified were Friday after 3:00 a.m., all day on Saturday, and Sunday until 7:00 p.m. Father's proposed parenting plan also suggested that he be awarded co-

parenting time during <u>every</u> fall and spring school break but only for four weeks during summer.

Upon review, we conclude that the trial court's modified PPP appears targeted toward balancing the Child's time with each parent during holidays and breaks through the school year while awarding Father co-parenting time for the majority of the Child's summer break (five weeks in total). Although Father did not receive precisely the amount of co-parenting time that he had requested, he was awarded an increase in his co-parenting time with the Child. Moreover, the residential schedule fashioned by the court thoughtfully contemplated Father's work schedule and other considerations. We reiterate that determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Armbrister*, 414 S.W.3d at 692 (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). "It is not the function of appellate courts to tweak a [parenting plan] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). We conclude that the trial court did not abuse its discretion in crafting the modified PPP, and we affirm the trial court's allocation of co-parenting time.

## VI. Child Support Deviation

Father urges that the trial court erred by failing to award Father a downward deviation in his child support obligation to account for the extraordinary travel expenses he would incur in picking up and transporting the Child for his co-parenting time because of Mother's relocation. We recognize that Tennessee Code Annotated § 36-6-108(d) provides:

> In fashioning a modified parenting plan under subdivisions (c)(3) and (4), the court shall consider and utilize available alternative arrangements to foster and continue the child's relationship with and access to the other parent. <u>The court shall also assess the costs of transporting the child for visitation, and determine whether a deviation from the child support guidelines should be considered in light of all factors, including, but not limited to, additional costs incurred for transporting the child for visitation</u>.

(Emphasis added.)

In this case, Father presented no evidence concerning additional costs that he would incur in transporting the Child for his co-parenting time. Furthermore, at the conclusion of the hearing, the trial court tasked the parties with preparing an appropriate child support worksheet for the court's approval, considering the provisions of the modified PPP and the evidence introduced at trial. The trial court ultimately adopted a child support worksheet that contains no deviations and indicates that it was prepared by

Mother's counsel. The record does not demonstrate that any objection to the worksheet was lodged by Father thereafter, given that this issue was not mentioned in Father's April 2021 motion to alter or amend or in any other subsequent motion. As such, we conclude that Father has waived this issue by failing to bring it to the trial court's attention and failing to proffer evidence thereon. *See*, *e.g.*, *Rountree v. Rountree*, 369 S.W.3d 122, 134 (Tenn. Ct. App. 2012) (finding that an issue on appeal was waived because of the party's failure to present proof concerning that issue at trial).

## VII. Award of Attorney's Fees

Finally, Father asserts that the trial court erred in its award of attorney's fees to Mother. Following its initial ruling concerning relocation, the trial court requested both parties' counsel to file attorney's fee affidavits and stated that the court would review those affidavits and make a determination regarding an award of fees. After the filing of affidavits by both counsel, the trial court entered an order on April 1, 2021, awarding attorney's fees to Mother in the amount of $12,548.80, the full amount requested in Mother's counsel's affidavit. Although Father argued that this award of attorney's fees was improper in his subsequent motion to alter or amend, the trial court denied Father's motion by order dated June 21, 2021. The trial court did, however, grant Father additional time within which to pay such fees. Importantly, neither of the trial court's orders concerning attorney's fees provided factual findings or legal conclusions concerning the award of attorney's fees to Mother.

Tennessee Code Annotated § 36-6-108(f) provides in pertinent part: "Either parent in a parental relocation matter may recover reasonable attorney fees and other litigation expenses from the other parent in the discretion of the court." As such, attorney's fee awards in relocation matters are typically reviewed for an abuse of discretion. *See Lima*, 2011 WL 3445961, at *9. Father argues that when determining that Mother should be awarded attorney's fees, the trial court failed to consider applicable factors, including whether Mother was the prevailing party, whether each party had the ability to pay his or her own attorney's fees, and whether Father acted in good faith in his opposition to Mother's petition to relocate. *See*, *e.g.*, *Dale v. Dale*, No. M2018-01999-COA-R3-CV, 2019 WL 7116204, at *3 (Tenn. Ct. App. Dec. 20, 2019); *Fichtel*, 2019 WL 3027010, at *26.

Inasmuch as the trial court failed to make findings of fact and conclusions of law concerning its decision to award attorney's fees to Mother, we are hampered in our ability to review the court's decision. *See Kathryne B.F. v. Michael B.*, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at *8 (Tenn. Ct. App. Mar. 13, 2014) (holding that "the lack of explanation in the court's order [regarding attorney's fees] stymies our ability to review the court's decision for an abuse of discretion"). The same is true regarding whether the amount of the attorney's fee award was reasonable. *See First Peoples Bank of Tenn. v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010) ("Where a

trial court awards a fee, but there is nothing in the record to indicate that the trial court actually evaluated the amount of the fee to see if it is reasonable in light of the appropriate factors, the correct approach is to vacate the award and 'remand [the] case to the trial court for a new determination of an attorney's fee award under [Supreme Court Rule 8, RPC 1.8] and the applicable case law.'" (quoting *Ferguson Harbour Inc. v. Flash Market, Inc.*, 124 S.W.3d 541, 553 (Tenn. Ct. App. 2003))). Ergo, based on the trial court's failure to render sufficient findings of fact and conclusions of law, the appropriate remedy is to vacate the attorney's fee award and remand the case to the trial court for written findings of fact and conclusions of law concerning its decision to award attorney's fees to Mother and the reasonableness of the amount awarded. *See Sibley v. Sibley*, No. M2015-01795-COA-R3-CV, 2017 WL 2297652, at *5 (Tenn. Ct. App. May 25, 2017).

We also note that in the conclusion of Mother's appellate brief, she has asked this Court to award her attorney's fees incurred in defending against Father's appeal. Inasmuch as Mother failed to raise this as an issue in her statement of issues, however, we determine that Mother has waived this issue on appeal. *See Gibson v. Bikas*, 556 S.W.3d 796, 810 (Tenn. Ct. App. 2018) (explaining that a party's request for attorney's fees on appeal would not be considered because it had not been raised as an issue in the statement of the issues); *Ethridge v. Estate of Ethridge*, 427 S.W.3d 389, 395 (Tenn. Ct. App. 2013) ("Issues not raised in the statement of the issues may be considered waived.").

## VIII. Conclusion

For the foregoing reasons, we vacate the trial court's attorney's fee award and remand the case to the trial court for entry of an order containing written findings of fact and conclusions of law concerning its decision to award attorney's fees to Mother and the reasonableness of the amount awarded. The trial court's judgment is affirmed in all other respects. Costs on appeal are assessed one-half to the appellant, Westley Murel Hall, and one-half to the appellee, Megan Leigh Hall.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

- 14 -